# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | | |
|---|---|---|
| United States of America<br>v.<br>Ryan O'Neil Grant<br><br>*Defendant(s)* | ) | Case No. |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 8/27/26 to 10/21/2026 in the county of Multnomah in the District of Oregon, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. 841(a)(1) | Distribution of Controlled Substances |
| 18 U.S.C. 924(c) | Possession of a Firearm in Furtherance of Drug Trafficking |

This criminal complaint is based on these facts:

Based on the attached affidavit by ATF TFO Hodges

☑ Continued on the attached sheet.

Attested to by Telephone
*Complainant's signature*

TFO Albert Pence Hodges
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 9:52 a.m.

Date: 10/22/2026

*Judge's signature*

City and state: Portland, Oregon

Jeffrey Armistead, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss: AFFIDAVIT OF ALBERT PENCE HODGES

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Task Force Officer Albert Pence Hodges, being duly sworn, do hereby depose and state as follows:

**Introduction and Task Force Officer Background**

1. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Portland, Oregon Field Office and have been so assigned since January 2022. My training includes ATF Task Force Officer Training at the ATF Field Division (Los Angeles, California) in June 2023 and Advanced Firearm Trafficking Training at the Federal Law Enforcement Training Center (Glynco, Georgia) in June of 2026. During this training, I received instruction relating to federal law violations, various investigation strategies, evidence collection, interview techniques, and search and seizure. As a Task Force Officer with ATF, part of my duties and responsibilities include conducting criminal investigations for possible violations of federal firearms, explosives, and arson laws. I have participated in investigations involving firearms trafficking, National Firearms Act violations, unlawful firearms possession and illegal narcotic trade, which often involve the use or threatened use of firearms. I have participated in investigations where the use of computers, smart phones, digital media, and the internet have been used in furtherance of crimes related to the illegal possession / trafficking of firearms and illegal narcotics.

2. I am also a sworn police officer employed by the City of Salem, Oregon, and a member of the Salem Police Department. I have been a police officer for over nine years. During my tenure as a police officer, I have worked as a patrol officer and detective and am currently assigned as a Criminal Investigations Section (Violent Crimes Unit) detective. I have had all

phases of police training, including investigation of property crimes, person crimes, narcotic crimes, felon apprehension, search and seizure, as well as other police operations. I have experience conducting criminal investigations including, but not limited to, homicides; sex crimes, assaults; child abuse; property crimes; robberies; narcotics investigations; gang crimes; traffic crimes; violent felony crimes; and other general crimes. I have received training in the investigation of these crimes from the Oregon Department of Public Safety Standards and Training (DPSST), the Marion County District Attorney's Office, the United States Attorney's Office District of Oregon, as well as numerous other local, state, and federal law enforcement agencies. I have also gained knowledge from my daily contact and conversations with experienced investigators, prosecutors, lab technicians, medical professionals, advocates and other professionals involved in the investigation and prosecution of offenders.

3. I submit this affidavit in support of a criminal complaint and arrest warrant for Ryan O'Neil **Grant** (DOB: XX/XX/1986) for Manufacture, Distribute, or Possess Controlled Substance in violation of Title 21, United States Code, Section(s) 841(a)(1); 846 and Title 18, United States Code, Section 924(c), makes it illegal to possess a firearm in furtherance of drug trafficking. As set forth below, there is probable cause to believe, and I do believe, Ryan O'Neil **Grant** committed the federal Violation of Manufacture, Distribute, or Possess Controlled Substance in violation of 21 U.S.C. § 841(a)(1); 846 and Title 18, United States Code, Section 924(c).

## Applicable Law

4. Title 21 U.S.C. § 841(a)(1) and 846 provides that it shall be unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance or attempt or conspire to do so.

Cocaine is a Schedule II controlled substances as defined under the United States Controlled Substance Act.

5. Title 18, United States Code, Section 924(c), makes it illegal to possess a firearm in furtherance of drug trafficking.



*Florida DL Photo of Ryan O'Neil Grant*

**Statement of Probable Cause**

6. [redacted]

[redacted]

7. The following information, facts, and occurrences are the result of my knowledge, conversations with other law enforcement officers, and from my review of reports related to this investigation. This affidavit is intended to show there is probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into this matter.

8. On August 27, 2026, [redacted] while working in [redacted], met "Chloe" at AJ's Gentleman's Club, 15920 SE Stark St. Portland, OR. Chloe was employed at the location as a dancer, provided her phone number, and offered to middle (facilitate) a deal of cocaine for an unidentified black male adult that was the DJ at the club. Based on the information "Chloe" provided, [redacted] was able to positively identify "Chloe" as [redacted] (hereinafter "**Manning**"). [redacted] positively identified Ryan O'Neil **Grant** (DOB: XX/XX/1986), (hereinafter "**Grant**") as the club DJ and prospective source of cocaine.

**Undercover[1] Buy 1**

9. On September 17th, 2026, [redacted] took part in an operation at AJ's Gentleman's Club, 15920 SE Stark St. Portland, OR, with the intent of purchasing cocaine from **Grant**, with **Manning** middling (facilitating) the deal. Prior to the start of the operation, [redacted] had been in communication with **Manning** to

[1] All undercover activity referenced in this affidavit was audio and video recorded and preserved as evidence in the associated ATF investigation.

arrange a purchase of cocaine. The [redacted] successfully purchased seven grams of suspected cocaine from **Grant** for $300, facilitated by **Manning**. The suspected cocaine tested presumptive positive and was entered into ATF evidence as item 001. During their interaction, [redacted] received the phone number [redacted] (Target Cell Phone) from **Grant** as his contact number for future purchases.

**Undercover Buy 2**

10. Later, on the same date, [redacted] communicated with **Grant** at Target Cell Phone and arranged a cocaine purchase outside AJ's Gentleman's Club, 15920 SE Stark St. Portland, OR. [redacted] purchased fifty-seven grams of suspected cocaine for $1,600, divided into two separate clear bags, from **Grant**. The suspected cocaine tested presumptive positive and was entered into ATF evidence as item 002. During this purchase **Grant** was observed driving a white in color, BMW M3 with rear Oregon license plate 080QCC. A later review of Oregon Department of Motor Vehicles (DMV) records revealed this vehicle was registered to **Grant** at 7975 NE Sabo St Hillsboro, OR 97006.

**Undercover Buy 3**

11. On September 21st 2026, [redacted] communicated with **Grant** at Target Cell Phone, and arranged a meeting at 8511 SE Woodstock Blvd, Portland, Oregon, which **Grant** described as his "spot." [redacted] entered a residence at that location and **Grant** handed the [redacted] suspected cocaine to inspect. [redacted] purchased approximately four and a half ounces of suspected cocaine from **Grant** for $3,200 dollars. The cocaine had a total weight, including packaging, of one hundred thirty-five grams and tested presumptive positive for cocaine. The suspected cocaine was entered into ATF evidence as item 003. During this purchase, agents observed

**Grant** driving a silver Mercedes Benz Sports Utility Vehicle bearing rear Washington license plate: CGU4651. A later review of Washington DMV records revealed this vehicle was an apparent rental.

12. Additionally, during the controlled purchase, **Grant** explained he rented rooms at 8511 SE Woodstock Blvd, Portland, Oregon, to dancers from AJ's Gentleman's Club to provide massages to clients. **Grant** told [redacted] in substance, that after the dancers paid for the rooms, the services they chose to perform at the location, other than massage, were their business. Based on information provided by **Grant**, the [redacted] believed that **Grant** was running prostitution out of the location**.**

13. [redacted] also made the following observations during this controlled purchase at 8511 SE Woodstock Blvd, Portland, Oregon**, Grant** utilized a code to get into the building, the entrance door immediately went to a second story, and the room in which the cocaine deal was conducted appeared to be a massage room. On the table in the room was a money counter machine and a black backpack. Once in the room **Grant** pulled a clear bag from the backpack which contained the cocaine he sold to the [redacted]

14. On October 6, 2026, the Honorable Youlee Yim You, U.S. Magistrate Judge for the District of Oregon, authorized a geolocation warrant for all information about the location of Target Cell Phone for a period of forty-five days (see case number 3:26-mc-00998). I began receiving geolocation data for Target Cell Phone on October 7, 2026 and conducted an ongoing review of the provided data. I observed Target Cell Phone was regularly, with varying degrees of certainty, located north of the Q1 apartments, 421 NE 80th Ave, Hillsboro, OR, 97006. Specifically, Target Cell Phone appeared to be located in or around what was later identified as a residential neighborhood of single-family homes on NE Sabo Street, Hillsboro, OR, but the

geolocation data associated with that device was not exact enough to determine a specific residence.

**Undercover Buy 4**

15. On October 13, 2026, [redacted] communicated with **Grant** on Target Cell Phone, and arranged a meeting at 5511 N. Albina Ave, Portland, OR, for the purchase of four ounces of cocaine. **Grant** arrived in the white 2021 BMW M3 sedan bearing rear Oregon license plate: 080QCC. [redacted] entered that vehicle and purchased approximately four ounces of suspected cocaine from **Grant** for $3,000. The purchased suspected cocaine had a total weight, including packaging, of one hundred nineteen grams and tested presumptive positive for cocaine. The suspected cocaine was entered into ATF evidence as item 004.

16. During this controlled purchase [redacted] made the following observations: **Grant's** Ring notifications kept going off and **Grant** made a comment, something to the effect of "one of the girls is at the spot." **Grant** then showed [redacted] Ring camera footage from inside the business. In this video, a girl walked around in lingerie or her underwear, **Grant** stated she was waiting for a client and would be turning the cameras off shortly. **Grant** made several additional comments about prostitution taking place inside the business "his place" and informed the [redacted] could meet his girls there anytime. **Grant** stated he charged the girls $100 per hour to use the location.

17. The [redacted] believe the security footage resembled the location they visited on September 21, 2026, but the shape of the rooms seemed different on video. When the [redacted] visited the 8511 SE Woodstock Blvd, Portland, Oregon, on September 21, 2026, they entered a white slatted door that took them immediately upstairs. The massages rooms appeared to be triangularly shaped in person. The [redacted] did not see the entirety of the unit, so the room on the security footage could have been located elsewhere in 8511 SE Woodstock Blvd, Portland,

Oregon. Based on the viewing of the security footage, the [redacted] thought the room appeared to be square shaped. It is possible the agents saw a skewed view based on the location of the security camera. However, the [redacted] believe that it is possible **Grant** also used another location. The green door to the right of 8511 SE Woodstock Blvd, Portland, Oregon in the photo below is a separate address, but likely a ground floor unit. Agents have not seen **Grant** enter the unit with the green door to the right of the 8511 SE Woodstock Blvd, Portland, Oregon but believe it is important to note this potential discrepancy. It is possible the security footage was from a different location, even possibly the green door to the right of 8511 SE Woodstock Blvd, Portland, Oregon**.**

**Undercover Buy 5**

18. On October 14, 2026, [redacted] communicated with **Grant** at Target Cell Phone, and arranged a meeting at 717 NW 16th Ave, Portland OR, between [redacted] and **Grant** for the purchase of four ounces of suspected cocaine. Prior to the scheduled meet between [redacted] and **Grant**, an agent conducted surveillance in the vicinity of Premises. SA Miller positively identified **Grant**, as **Grant** exited the residence and walked into an attached garage. **Grant** backed a motorcycle out of the garage and left Premises, on the motorcycle. During his surveillance, the agent also observed a Mercedes Benz Sports Utility Vehicle bearing Washington rear license plate: CGU4651 parked adjacent to Premises. This SUV was previously associated with **Grant** as detailed above.

19. **Grant** subsequently arrived at the meet location on the motorcycle and contacted [redacted] through the open driver's side window of the ATF undercover vehicle [redacted] was driving. [redacted] purchased approximately four ounces of suspected cocaine from **Grant** for $3,000. The purchased suspected cocaine had a total weight, including packaging, of one hundred nineteen

grams and tested presumptive positive for cocaine. The suspected cocaine was entered into ATF evidence as item 006.

20. The rear plate of the motorcycle operated by **Grant** was partially identified as Oregon license plate "03387." Research through Oregon Department of Motor Vehicle records revealed Oregon license plate M903387 was registered to "APEX TRI INC" at both Premises and 8511 SE Woodstock Blvd, Portland, OR 97266. As detailed above both these locations were associated with **Grant**.

**Takedown and Premises Seach Warrant**

21. On October 19, 2026, United States Magistrate Judge Stacie F. Beckerman, authorized search warrants to search **Grant**, 7975 NE Sabo St, Hillsboro, OR and Target Cell Phone.

22. On October 21, 2026, [redacted] contacted **Grant** on Target Cell Phone to set up a buy-bust. [redacted] asked **Grant** to purchase cocaine. Prior to the buy-bust, **Grant** communicated with [redacted] and informed [redacted] that he was going to his massage parlor to sell drugs to someone. The [redacted] believe **Grant** was referring to 8511 SE Woodstock Blvd, Portland, Oregon. ATF SAs on surveillance observed **Grant** arrive at 8511 SE Woodstock Blvd, Portland, Oregon driving the Target Vehicle and briefly enter, before leaving 8511 SE Woodstock Blvd, Portland, Oregon and proceeding back to his residence for a relatively short amount of time before the deal with [redacted]

23. **Grant** drove to the deal location in the aforementioned Mercedes SUV. **Grant** arrived at the deal location, Maxwell's Pub & Grill, 737 SW 185th Ave, Beaverton, OR, and [redacted] purchased approximately nine ounces of suspected cocaine from **Grant** for $6,300. The purchased cocaine had a total weight, including packaging, of two-hundred-fifty-nine grams and tested presumptive positive for cocaine.

24. During the deal, **Grant** told [redacted] that **Grant** received weekly shipments of around a kilo of cocaine from the east coast. Ultimately, ATF agents moved in to arrest **Grant**. **Grant** was arrested and read his Miranda rights. **Grant** invoked his right to remain silent.

25. After the deal but prior to **Grant's** arrest, while conducting surveillance, an ATF agent observed **Grant** access the front passenger seat of the Mercedes SUV. After **Grant's** arrest, the ATF agent saw a black rectangular soft case or bag lying on top of the front passenger seat of the Mercedes SUV. Based on their training and experience, ATF agents at the scene believed the bag was used to transport the cocaine [redacted] ordered.

26. While securing the Mercedes SUV pending application for a search warrant for that vehicle, to search for evidence of drug trafficking, including seizing the bag used to transport the cocaine, ATF agents on scene observed bystanders congregating, filming and generally attempting to approach the Mercedes SUV. Based on the imperative to keep the Mercedes SUV secure prior to any search being conducted, the limited number of agents on scene, and the attendant officer safety concerns, the Mercedes SUV was sealed and towed to a secure parking area at the ATF field office in Portland.

27. Agents then executed the search warrant at 7975 NE Sabo St, Hillsboro, OR, **Grant's** residence. Agents seized eight total firearms, a significant amount of marijuana (estimated around twenty pounds), packaged in multiple large black trash bags. Additionally, agents observed a vacuum sealer, heat sealer, and packaged marijuana leaf in one-pound containers. Multiple digital scales were also located inside the residence. On the kitchen counter of the residence, agents located a bag which contained a loaded firearm (one of the eight seized), a user amount of suspected cocaine and a Florida driver's license featuring **Grant's** name and photograph. I believe the firearms were possessed to further **Grant's** drug trafficking. I know

drug dealing to be a dangerous business and firearms are used to protect their product and collect debts.

**Review of Criminal Histories**

28. Agents conducted reviewed a computerized criminal history for **Manning** and found her to have no prior arrests. ATF SA Miller reviewed a computerized criminal history for **Grant** and found 12 arrest cycles from four states with the following felony conviction:

- 2023, Possession with Intent to Distribute, Coweta County Superior Court, State of Georgia, case number 2023R461. Sentenced to 5 years' probation accepted in Oregon through Washington County Circuit Court.

**Conclusion**

29. Based on the foregoing, I have probable cause to believe, and I do believe, that Ryan O'Neil **Grant** committed the federal Violation of Manufacture, Distribute, or Possess Controlled Substance in violation of 21 U.S.C. § 841(a)(1); 846 and Title 18, United States Code, Section 924(c). I therefore request that the Court issue a criminal complaint and arrest warrant for Ryan O'Neil **Grant**.

30. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney Lewis Burkhart, and AUSA Burkhart advised me that, in his opinion, the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

/ / / /

**Request for Sealing**

31. It is respectfully requested that the Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested criminal complaint and arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may endanger the life or physical safety of an individual, cause flight from prosecution, cause destruction of or tampering with evidence, cause intimidation of potential witnesses, or otherwise seriously jeopardize an investigation. Premature disclosure of the affidavit, the criminal complaint, and the arrest warrant may adversely affect the integrity of the investigation.

*Attested to by Telephone*___________
ALBERT PENCE HODGES
Task Force Officer, ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 9:52 a.m. on October 22, 2026.

________________________________
JEFFREY ARMISTEAD
United States Magistrate Judge